

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00408-CV

MICHAEL G. MCCARTHY, INDIVIDUALLY AND AS TRUSTEE
OF THE MCCARTHY M G LIVING TRUST,
AND MARYLEIGH DEJERNETT, APPELLANTS

V.

REALTY AUSTIN, LLC AND MATTHEW DITLOW, APPELLEES

On Appeal from the 250th District Court
Travis County, Texas[1]
Trial Court No. D-1-GN-13-002478, Honorable Stephen Yelenosky, Presiding

August 19, 2016

## OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Michael G. McCarthy, individually and as trustee of the McCarthy MG Living Trust, appeal the judgment of the trial court in favor of Realty Austin, LLC, and Matthew Ditlow awarding Ditlow the sum of $250,000 as an earned commission based upon the sale of a certain residence. The judgment of the trial court followed a jury trial in which the jury unanimously found that Ditlow was the procuring cause of the sale of that

[1] Pursuant to the Texas Supreme Court's docket equalization efforts, this case was transferred to this Court from the Third Court of Appeals. See TEX. GOV'T CODE ANN. § 73.001 (West 2013).

particular residence. The judgment also awarded prejudgment interest of $25,753.43, and attorney's fees of $250,000. McCarthy appeals through three issues contending that: (1) the trial court committed error in construing the real estate documents, (2) the evidence was legally and factually insufficient to support the jury's verdict, and (3) the trial court erred in its award of attorney's fees. We will reverse.

Factual and Procedural Background

Michael G. McCarthy built a 15,000 square foot home at 12021 Selma Hughes Park Road on Lake Austin in 1998. Almost as soon as he had finished construction on the property, McCarthy listed the residence for sale. Over the ensuing years, McCarthy used a number of different real estate brokers in an attempt to sell the property, all to no avail. On April 7, 2011, McCarthy engaged the services of Maryleigh Dejernett and her real estate brokerage firm, Realty Austin, to attempt to sell the residence on Selma Hughes Park Road. In connection with retaining Dejernett to sell the Selma Hughes home, McCarthy and Dejernett entered into a MLS listing agreement and an addendum to that agreement. The addendum provided for the payment of a 2.5% commission to the broker who procured the buyer. Dejernett was unsuccessful in her attempts to sell the property.

In February 2013, Stephen Davis was looking for a residential property to lease on Lake Austin. In order to find a property that met his requirements, Davis engaged the services of Ditlow. Through his real estate business, Ditlow knew that the Selma Hughes property might be available for a short-term lease. Ditlow contacted Dejernett and arranged for Davis to tour the Selma Hughes property, on February 21, 2013.

Davis decided to try to lease the property on that same day. To effectuate the lease of the property, Ditlow sent a draft of a proposed lease to Dejernett. As a part of the proposed lease, Ditlow submitted an agreement between brokers which provided a mechanism for Ditlow to earn a commission if Davis decided to purchase the property.

McCarthy rejected the lease as proposed by Ditlow and advised his broker, Dejernett, that the listing agreement would govern any sales commissions. Ditlow agreed to this proposal. McCarthy and Davis eventually executed the lease between February 22nd and 24th, 2013. Subsequently, between the 25th and 26th of February, the parties initialed a lease addendum that modified the lease's effective date.

Of import for the purposes of this opinion, the lease addendum contained language regarding any sales commissions. As drafted by McCarthy, the provisions at issue are:

> 12. Brokers: regarding commissions in the event that tenant buys property. Please see MLS Agreement. Owner will pay commissions based on this prior agreement.
>
> 13. Brokers, All Access Austin, Maryleigh Dejernett and Realty Austin, Associate Matt Ditlow each will be paid 50% of the first month rent by owner, Michael McCarthy.
>
> This payment/commission equates to 9/12 of $22K paid at execution of the lease and the remainder commission will be paid @ 1/12 of monthly rent should the tenant continue or renew lease on a month-to-month basis after the first 9 months.
>
> *Agents receive commissions on a one-year lease only. March 10, 2013 through March 10, 2014.

Davis moved into the residence, as per the terms of the lease.

3

In March 2013, Davis's personal representative, William David Knox, contacted Dejernett about serving as Davis's broker in the search for a Lake Austin property to purchase. To this end, Davis eventually entered into a contract and purchased a house on Mañana Street. However, once Davis completed the purchase, he decided the Mañana Street house was too small and never moved out of the Selma Hughes property.

In June 2013, Davis was faced with the possibility of having to move from the Selma Huges property because a potential buyer was planning to tour the property. Throughout his tenure as a tenant, Davis had disliked having to vacate the property each time it was to be shown to a prospective purchaser. Further, after becoming dissatisfied with the Mañana Street property, Davis's conduct indicated he wanted to stay in the Selma Hughes property. Accordingly, once Davis learned of the proposed showing of the Selma Hughes property, he contacted Dejernett's real estate company. This lead to the execution of a "Deal Points" memorandum regarding Davis's purchase of the property.

The "Deal Points" memorandum agreement was executed on June 14, 2013, and signed by McCarthy as the seller, Davis as the buyer, and Dejernett as the broker. Further, Dejernett testified that she was operating as the representative of McCarthy and no one else during the execution of the "Deal Points" memorandum and thereafter. The "Deal Points" memorandum became a residential sales contract executed by McCarthy and Davis. Ultimately, the sale of the property to Davis closed on July 30, 2013. According to the settlement statement at the closing, the only fees paid to any realtor were those paid to Dejernett.

4

According to the testimony at trial, Ditlow learned of the pending sale of the Selma Hughes property in mid-July of 2013. Ditlow contacted Dejernett to ascertain if he needed to do anything to ensure that the sale was closed. His offer of assistance was not accepted. Ditlow then contacted his attorney in an effort to ensure that his right to broker's fees was protected. The sale closed and Ditlow was not paid any broker's fees. This lawsuit followed.

After the close of the evidence, the trial court submitted one question to the jury. The question and instructions submitted were as follows:

> Was Mr. Ditlow the procuring cause of the purchase of the Selma Hughes property?
>
> You are instructed that a realtor is the procuring cause of the purchase when "through his efforts he produced a person ready, able, and willing to buy the property."
>
> You are instructed that whether or not a realtor is a procuring cause of a purchase is not determined by a buyer's choice to continue or discontinue using that realtor before a purchase closes.

The jury answered the question "Yes" and, based upon the jury's answer to the question, the trial court entered a judgment that the amount of commission owed to Ditlow was $250,000. Additionally the trial court ordered $25,753.43 in prejudgment interest and attorney's fees in the amount of $250,000 for services rendered through the date of judgment with an additional $5,000 for post-judgment motions before the trial court. The trial court awarded $45,000 for attorney's fees in case of appeal to the Court of Appeals and an additional $5,000 if petition for review is filed at the Texas Supreme Court, and an additional $10,000 should such petition for review be granted.

McCarthy filed a motion for judgment notwithstanding the jury's verdict and a motion for new trial. The trial court entered an order overruling both motions and this appeal resulted.

McCarthy contends that the trial court committed error in three ways: (1) the trial court committed error in construing the real estate documents, (2) the evidence was legally and factually insufficient to support the jury's verdict, and (3) the trial court erred in its award of attorney's fees. Because we find the evidence was legally insufficient on the question of procuring cause, we reverse the judgment of the trial court.

Procuring Cause and Sufficiency of the Evidence

We will address McCarthy's issue regarding the legal sufficiency of the evidence to support the jury's finding that Ditlow was the procuring cause of the sale first because, if we find that the evidence is legally insufficient to support that finding, it will provide the greatest relief to McCarthy. *See Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.,* 995 S.W.2d 675, 677 (Tex. 1999) (per curiam).

Evidence is legally insufficient to support a jury finding when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner,* 59 Tex. Sup. J. 1455, 2016 Tex. LEXIS 580, at *75 (June 24, 2016). When determining whether legally sufficient evidence supports a finding, we must consider evidence favorable to the finding if a reasonable factfinder could and

disregard evidence contrary to the finding unless a reasonable factfinder could not. *Id.* at *75-76. The evidence is legally sufficient if it constitutes more than a "scintilla" of evidence on which a reasonable juror could find the fact to be true. *Id.* at *76.

When discussing broker's fees, our jurisprudence provides "that when a real estate broker is instrumental in bringing together the seller and a purchaser who is acceptable to him, and they consummate a sale and purchase of property on terms that are satisfactory to the seller, this constitutes the agent the procuring cause of the sale, and he is entitled to the commission agreed upon." *Keener v. Cleveland,* 250 S.W. 151, 152 (Tex. 1923). However, simply introducing the property in question to the buyer, without more, is not sufficient to earn the brokerage commission, rather the broker must produce a buyer who is ready, willing, and able to buy the property at issue while the contract is in force. *See Goodwin v. Gunter,* 185 S.W. 295, 298 (Tex. 1916); *Snoddy v. Wallace,* 625 S.W.2d 81, 83 (Tex. App.—Tyler 1981, writ ref'd n.r.e.).

McCarthy contends that there is no evidence that supports the proposition that Davis was produced as a ready, willing, and able buyer to purchase the Selma Hughes property due to the efforts of Ditlow. According to the analysis of McCarthy, all the evidence shows is that Davis was a ready, willing, and able lessee due to the efforts of Ditlow. McCarthy points to the testimony of Ditlow that shows that Ditlow did nothing to bring about the ultimate sale of the property to Davis, other than to introduce Davis to the property by showing the property to him during the leasing process. Further, McCarthy points out that Ditlow himself denied discussing the possibility of purchasing the Selma Hughes property with Davis during the negotiation of the lease.

7

Ditlow's contention is that, because he brought McCarthy and Davis together, he is entitled to the broker's commission set forth in the addendum to the MLS agreement and referred to in the lease addendum. Under this theory, once Ditlow produced Davis to lease the property and then Davis ultimately bought the property, Ditlow would be entitled to the broker's fee. Under Ditlow's analysis, the fact that the lease addendum referred all issues back to the MLS addendum that, in turn, provided for a broker's fee to the broker representing the buyer, is some evidence that Ditlow was the procuring cause of the purchase of the Selma Hughes property.

Ditlow testified that, during the time he was representing Davis regarding the lease of the Selma Hughes property, he never talked to Davis about purchasing the property. Additionally, a review of the record shows that Ditlow had virtually no contact with Davis after the lease agreement was executed. In fact, the record reveals that in the interim period between the execution of the lease agreement and the closing of the sale, Davis had made an independent decision to purchase a property other than the Selma Hughes property. Davis, in fact, did purchase the Mañana Street property. However, Davis ultimately decided not to move into the Mañana Street property because he felt it was too small.

Subsequently, Davis was moved to purchase the Selma Hughes property not because of the efforts of Ditlow but, rather, because he did not want to have to move from the leased property if the property sold. Further, the record reflects that, at the time of the purchase, Ditlow had no agency agreement with Davis to represent Davis in the purchase of any real estate. The only agreement Ditlow ever had with Davis was an agreement to represent Davis in a search for a property to lease. Under the facts of the

8

case, Davis may have been able to purchase the Selma Hughes property when Ditlow represented him, but there is no evidence that he was ready and willing to purchase that property during Ditlow's representation of Davis. *See Goodwin,* 185 S.W. at 298; *Keener,* 250 S.W. at 152; *Snoddy,* 625 S.W.2d at 83. Accordingly, we sustain McCarthy's issue regarding the legal sufficiency of the evidence to support the jury's verdict. *Crosstex N. Tex. Pipeline, L.P.*, 2016 Tex. LEXIS 580, at *75.

Ditlow's reliance on the lease addendum and its reference back to the MLS addendum do not change our conclusion. All these documents prove is that, had Davis been a ready, willing and able purchaser, Ditlow had a contractual right to the brokerage fee of 2.5%. They provide no evidence that Davis was such a purchaser.

Having determined that the evidence was legally insufficient to support the jury's verdict, we reverse the trial court's award of attorney's fees to Ditlow. Likewise, we need not address the other issues raised by appellant for they are not necessary to our final disposition of this matter. *See* Tex. R. App. P. 47.1.

## Conclusion

Having determined that the evidence was legally insufficient to support the jury's answer to the jury question, we reverse and render judgment that Ditlow take nothing in his suit for brokerage fees. We remand the matter to the trial court for a determination of whether McCarthy is entitled to attorney's fees.

> Mackey K. Hancock
> Justice